OPINION OF THE COURT
William Garnett, J.
*310 The defendant was arraigned in Kings County on April 13, 1996. He was charged with the misdemeanor crimes of operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]), and criminal mischief in the fourth degree (Penal Law § 145.00 [3]).
The prosecution alleged that the defendant operated his vehicle with a blood alcohol level of .13 of 1%. The People contend that the defendant, while operating his vehicle in an intoxicated condition, struck a construction vehicle which was parked behind cones and red lights on the lower level of the Verrazzano Narrows Bridge.
In an alleged statement, the defendant, a New York City fireman, conceded that he had been drinking beers at his firehouse between 8:30 p.m. and 1:00 a.m. when he left to drive home. The accident occurred at approximately 2:00 a.m.
At his arraignment in Brooklyn, the Judge suspended the defendant’s license pending prosecution pursuant to Vehicle and Traffic Law § 1193 (2) (e) (7) (a).* The Judge adjourned the case for two business days for the defendant to make an application for a hardship privilege pursuant to Vehicle and Traffic Law § 1193 (2) (e) (7) (e) in Richmond County Criminal Court.
At the hearing, the defendant averred that as a New York City firefighter, an emergency employee, he is required to be a licensed driver. It was acknowledged however that he does not drive any fire apparatus. The defense argued that the defendant needs to drive from Staten Island, his home, to his assigned firehouse on West 83rd Street in Manhattan. It was further contended that he requires his car to travel to firehouses to which he is temporarily assigned. As an example, the defendant had been reassigned to a fire station 30 blocks to the north in Manhattan on one occasion. In support of his contentions, the defendant submitted a letter from Captain Francis Ritchie of Engine Company 74. Captain Ritchie stated that a license "is a requirement of the job”.
Vehicle and Traffic Law § 1193 (2) (e) (7) (e) provides that if a suspension pending prosecution will result in extreme hardship, the court may grant, in its discretion, a hardship privilege. "Extreme hardship”, as is applicable in this case, is explicitly defined as an "inability to obtain alternative means *311 of travel to or from the licensee’s employment”. The burden to establish an extreme hardship is placed squarely on the defendant.
"Extreme hardship” does not encompass within its definition inconvenience to the defendant or any consideration of whether the defendant is required, as a condition of employment, to operate vehicles as a properly licensed driver. The clear definition of extreme hardship could have easily been enlarged to exclude persons who are employed in positions which may require an emergency response. To interpret the language of this statute to preclude its application to firefighters would en-graft a class exception which was not provided for by the Legislature.
If the Legislature had chosen, the grounds for a hardship privilege could have been broadened to include the criteria employed by the Commissioner of Motor Vehicles in granting conditional licenses to those qualified individuals who enroll in the Drunk Driving Program. (Vehicle and Traffic Law § 1196 [7].) Those criteria include the issuance of a conditional license to accommodate a licensee whose employment requires the operation of a motor vehicle. A defendant whose license has been suspended pending prosecution for 30 days apparently may apply for a conditional license pursuant to Vehicle and Traffic Law § 1196. (Vehicle and Traffic Law § 1193 [2] [e] [7] [d].) Thus, the Commissioner may be empowered to grant a conditional license to meet the requirement that the defendant have a license as a condition of his employment.
The narrow applicability of the extreme hardship exception is arguably consistent with the legislative treatment of individuals who are confronted with requests for chemical tests after an arrest for a violation of Vehicle and Traffic Law § 1192. If an individual agrees to take the test and records a blood alcohol reading of less than .10 of 1%, that person suffers no license consequences before the case is decided on its merits. However, if the test is administered and the defendant registers a reading of .10 or more, then the license may be taken pending prosecution for, at least, 30 days before a conditional license may be issued by the Commissioner. If a person thwarts the entire legislative scheme by refusing to take a chemical test, and assuming that the refusal is upheld by the Commissioner after an administrative hearing held pursuant to Vehicle and Traffic Law § 1194 (2) (c), then an individual may not be issued a conditional license by the Commissioner. (Vehicle and Traffic Law § 1194 [3].) Thus, the statutory structure balances the *312 Legislature’s desire to encourage compliance with the administration of chemical tests by attaching untoward license consequences with the legislative purpose of deterring intoxicated driving by suspending licenses on a preliminary showing.
In People v Bridgman (163 Misc 2d 818, 820 [Canandaigua City Ct 1995]), the court suggested factors which might be taken into consideration in determining whether a suspension pending prosecution will work an extreme hardship. Among the factors considered relevant by this court are: (1) whether licensed household members, friends or co-workers can provide transportation; (2) the proximity of the licensee’s place of employment; (3) the availability of public transportation to the place of employment and the defendant’s home; and (4) the defendant’s ability to afford public transportation. Contrary to the suggestion of the court in Bridgman, this court does not believe that the licensee’s occupation per se is a factor in deciding whether the defendant’s situation falls within the narrow ambit of extreme hardship.
Applying the plain statutory language and some of the factors adumbrated in Bridgman (supra), the court finds that the defendant has not met his burden to establish that the suspension of his license pending prosecution works an extreme hardship. The defense has not proved that he would be unable to use alternative means of transportation to reach his place of employment.
The defense has provided no evidence that household members, friends or co-workers are unavailable to provide alternative transportation.
Although the defendant’s place of employment is in another Borough of New York City, public transportation is ubiquitous in the City of New York. Clearly, the defendant as a firefighter can afford the fares. A perusal of a map of Staten Island reveals that the defendant’s home is two short blocks from the Staten Island Rapid Transit Railroad’s "Bay Terrace” Station. The maximum time to the Staten Island Ferry is 22 minutes. The ferry which travels to Manhattan arrives within 30 minutes of departure. A subway is available in Manhattan. Thus, the defendant has access to public transportation.
Therefore, applying the circumscribed statutory definition of "extreme hardship”, the defendant has not met his burden of establishing an inability to procure alternative means of *313 transportation. The defendant’s status as a firefighter and the putative requirements of his job are of no moment in determining this motion.
Thus, the application for a hardship privilege is denied.

 The arraignment Judge in Brooklyn presumably found the predicate for suspension pending prosecution. (Vehicle and Traffic Law § 1193 [2] [e] [7] [b].) The defense has not argued before this court that the Judge did not make the requisite findings for the suspension.